## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ANNA MARIE CARMEAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 04-4086 |
| JO ANNE B. BARNHART, Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

# O R D E R

This matter is now before the Court on Plaintiff's Motion for Summary Reversal and the Commissioner's Motion to Affirm. For the reasons set forth below, Plaintiff's Motion for Summary Reversal [#8] is GRANTED, the Defendant's Motion to Affirm [#12] is DENIED, and this matter is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

### BACKGROUND

Plaintiff, Anna Marie Carmean ("Carmean"), was 42 years' old at the time of her administrative hearing; she is five feet, four and a half inches tall and weighs 198 pounds. (R30) She lives alone and has an associate's degree. (R30, R32) In the past, Carmean has been employed as an optical technician, secretary, assistant director of a daycare, teaching assistant, house parent, and an operator for a telephone answering service. (R33-35) Prior to stopping work in December 1999, she was last employed as a postmaster relief person and advertising representative. (R33)

On November 20, 2000, Carmean applied for disability insurance benefits ("DIB"), alleging disability due to joint pain, diabetes, and asthma that began on December 10, 1999. (R87-89) Her application was denied both initially and on reconsideration. (R63, R69) On December 11, 2002, Carmean requested a hearing before an administrative law judge ("ALJ"). (R11) A hearing was held before ALJ Barbara Welsch on August 21, 2002, at which Carmean and vocational expert ("VE") Jennie Chin appeared and gave testimony. (R27, R29)

Carmean testified that her right knee gives out frequently and that she has problems with back pain and stiffness. (R36) She has trouble lifting, gripping, and holding things because of pain and numbness in her hands and arms. Id. Carmean stated that she also suffered from migraine headaches. Id. She is currently taking Ultram, Ibuprofen, Flexeril, Ultracet, Amaryl, Allegra, Proventil, Flovent, and Darvocet. (R20) Her medication does help some with the pain, but she still has trouble sleeping at night. (R36)

When she gets up between 8:00 and 9:00 a.m. in the morning, Carmean typically fixes something to eat and tries to keep things neat around the house. (R37) Cooking and doing dishes take her longer now, but she is able to stand for five to ten minutes to fix a meal. (R37, R49) She is able to bathe and dress herself and is in the process of trying to quit smoking. (R40) Carmean stated that her knee gives out on her frequently, and she has to use a crutch to help keep her balance. (R49) If she sits for long periods of time, her legs go numb and start to swell, and her back begins to hurt. (R50) Carmean also experiences numbness in her hands, as well as trouble gripping small objects. (R50-51) She gets three to four hours of sleep a night as a result of her pain and muscle spasms. (R51)

Carmean watches TV, reads, visits with her mother, and also visits friends a couple of times a week. (R37-38) She has a driver's license and can drive herself. (R39) She goes grocery shopping once a month with assistance but can go to the local store to pick up a few items on her own if she needs them. (R38) She reads and goes to the library to get books. Id. Carmean testified that she is no longer able to do yard work, garden, or paint like she used to do. (R39)

The ALJ presented the VE with the following hypothetical:

> I'm going to ask you a hypothetical question and I ask that you please disregard any information you may have gathered from reading the file or listening to the testimony other than that which I give you specifically in the hypothetical. I'll start out with a very restricted hypothetical. Assume an individual who's 42-years-old with the same education as Ms. Carmean. An individual who would be limited to sedentary work with minimal standing and walking, no concentrated exposure to respiratory irritants including extreme cold or heat, and while these elements are not usually part of sedentary work, no jobs which would require climbing, kneeling, crawling, crouching, to actually perform the work or working at unprotected heights. How would these restrictions affect the performance of the past relevant work?

(R53) VE Chin testified that this hypothetical individual could still perform the past relevant work of a secretary, telephone operator, and telephone solicitor, all of which would allow her to stand at various times throughout the day. (R54) Furthermore, assuming that this individual had no past relevant work, she would be capable of performing unskilled entry level work, such as cashiering or administrative support occupations/clerical, for which 5,906 and 2,182 jobs exist in the state of Illinois respectively. (R54) These positions also allow the hypothetical individual to sit and stand throughout the work day. (R55)

On November 21, 2002, the ALJ issued her decision. (R17) The ALJ found that Carmean suffers from severe impairment in the form of diabetes, asthma, and degenerative

arthritis of the right knee. (R18) The ALJ determined, however, that Carmean does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. Id. After considering the medical evidence in the record and relevant credibility factors, the ALJ found the degree of Carmean's alleged pain and functional limitations to be not fully substantiated by the record. (R20) After determining that she would be able to perform her past relevant work as a secretary, telephone operator, or telephone solicitor, the ALJ decided the case at step four after finding that Carmean retained the residual functional capacity to perform a significant number of jobs in the national economy. (R21) Alternatively, assuming that Carmean was not capable of performing past relevant work, the ALJ identified other jobs existing in significant numbers which she could perform. (R21) Based on a demonstrated exertional capacity for a limited range of sedentary work, Carmean's age, education, and work experience, the ALJ concluded that Carmean was not under a disability as defined in the Social Security Act (the "Act"). Id.

Carmean submitted a Request for Review of Hearing Decision. (R11) On September 24, 2004, the Appeals Council declined review of her claim, and the ALJ's decision became the final decision of the Commissioner. (R7-10) This appeal followed. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

In order to be entitled to DIB, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining

whether a plaintiff is eligible for disability benefits.  See 20 C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Act is a two-step process.  First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382(c)(a)(3)(A).  Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment.  McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980).  That factual determination is made by using a five-step test.  See 20 C.F.R. §§ 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows:  (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled.  A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. Garfield v. Schweiker, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful

employment.  Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence.  Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989).  The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).  Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous.  Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580 (1986).

In her appeal, Carmean's pleadings can be construed to raise essentially one claim: that the ALJ's decision finding her able to perform a significant number of jobs in the national economy was not supported by substantial evidence.  The Court disagrees and finds that the ALJ's finding that Carmean has the residual functional capacity to perform the physical exertion and nonexertional requirements of sedentary work, with minimal standing and walking, allowing her to sit or stand as needed, with certain other limitations is supported by substantial evidence.

Carmean first suggests that the ALJ failed to fully develop the record in establishing her physical limitations, particularly her need for a sit/stand option.  However, the ALJ specifically discussed Carmean's complaint that she could not walk more than one-third of

a block, stand longer than 10 minutes, sit longer than 30 minutes, or lift more than 10 pounds. (R19) The ALJ noted that the degree of the complaints had only "limited objective support in the record." Id.  Carmean had right knee surgeries in 1977 and 1987and visited the emergency room for right knee pain in 1999.  While her knee problems prevent more than minimal walking and standing, there is no objective evidence of pathology involving her back, hips, neck, or hands.  Id.  A consultative examination in January 2001 demonstrated no reduced range of motion in any joints other than the right knee and no disabling problems regarding her joints. Id.

The ALJ acknowledged that Carmean lives alone and that she is able to walk, stand, lift light items, drive, manipulate objects with her hands, fix meals, shop, do dishes and other light housework throughout the day. (R20) The suggestion that she requires long and frequent breaks to complete these activities was found to be unsupported by objective evidence or other credibility factors.  Id.  In assessing her residual functional capacity (RFC), the ALJ specifically found that Carmean needed "sedentary work, with minimal standing and walking, which allows her to sit or stand as needed to relieve pain."  (R21) (emphasis added)    The ALJ also concluded that she must avoid work that involved concentrated exposure to respiratory irritants including extremes of cold or heat, climbing, kneeling, crawling, crouching, or work at unprotected heights. (R22)

While the ALJ did not specifically define what she meant by minimal standing and walking, the ALJ clearly indicated in her decision that Carmean must be able to change from sitting to standing as needed to relieve her pain.  However, in the hypothetical that was considered by the VE in evaluating both past relevant work and other jobs in the national economy, the requirement was not stated as clearly or specifically. Rather, the

hypothetical instructed the VE to disregard any information gathered from reading the file or listening to the testimony during the hearing before describing an individual limited to sedentary work with minimal standing and walking; there was no specific requirement for the ability to alternate between sitting and standing as needed articulated in the hypothetical. (R53) The ALJ then clarified that her past relevant work as a secretary, telephone operator, and telephone solicitor allowed her to have some mobility by standing at various times throughout the day and also established that the clerical and cashiering positions in the national economy would allow her to sit and stand throughout the work day, but the ALJ did not refer specifically to a sit/stand option, and being able to sit and stand throughout the day is not necessarily equivalent to being able to change between sitting and standing essentially at will during the entire shift.

As the ALJ's hypothetical question upon which the VE's opinions were based was not sufficiently clear to ensure that the necessity of a sit/stand option was considered in evaluating Carmean's past relevant work and other work in the national economy, the Court concludes that the Agency's decision must be reversed pursuant to sentence four of 42 U.S.C. § 405(g), which authorizes the Court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This matter will be remanded to the Commissioner for rehearing to correct the above identified deficiencies by making a specific record regarding the requirement of a sit/stand option and the impact of that requirement on both Carmean's past relevant work and other work in the national economy.

**CONCLUSION**

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment [#8] is GRANTED, and the Commissioner's Motion to Affirm [#12] is DENIED. The Commissioner's decision in this matter is REVERSED, and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. The Clerk's Office is hereby directed to enter Judgment in favor of Plaintiff and against Defendant.

ENTERED this 10th day of January, 2006.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge